# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| TONIA M. GARRETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. CV-13-S-714-NE |
| | ) |
| WALGREEN CO., INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Tonia M. Garrett, asserts claims against defendant, Walgreen Co., Inc., for negligence and wantonness arising from a slip-and-fall accident that occurred on its premises.[1]  Plaintiff commenced this action in the Circuit Court of Morgan County, Alabama.[2]  Defendant removed the action to the Northern District of Alabama pursuant to 28 U.S.C. § 1332 on the grounds of the parties' complete diversity of citizenship and the requisite amount in controversy.[3]  Accordingly, "state substantive law and federal procedural law" apply.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  The action is before the court on defendant's motion for summary judgment.[4]  Upon consideration of the parties' briefs and evidentiary submissions, this court will grant

---

[1] *See* doc. no. 1-2 (Complaint).

[2] *Id.* at 2.

[3] Doc. no. 1 (Notice of Removal), at 2-5.  Section 1332 provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between (1) Citizens of different States[.]" 28 U.S.C. § 1332(a)(1) (alterations supplied).

[4] *See* doc. no. 4 (Motion for Summary Judgment).

the motion.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 indicates that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he plain language of [that rule] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alterations supplied).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> [However,] [t]he mere existence of *some* factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal citations omitted) (alterations and emphasis suppled).

## II.  SUMMARY OF FACTS

Plaintiff entered a Walgreens pharmacy in Decatur, Alabama to purchase detergent on August 15, 2010 at some point between the hours of 6:00 and 6:30 p.m.[5] A storm had struck the Decatur area earlier in the day, and it was still raining when plaintiff arrived at the pharmacy.[6] Despite the weather, plaintiff was dressed in "flip-flops."[7]

As a result of the storm, rainwater had entered the pharmacy through the front door, and the floor near the door was wet.[8] Plaintiff "admits that the water was clear,"[9] that there were no puddles on the floor,[10] and that nothing was blocking her view of the floor.[11] She also acknowledges that there were no problems with the lighting, no defects (such as buckled or broken tiles) in the construction of the floor, and no substances besides water (such as food) on the floor.[12]

A still photograph from a security camera shows that defendant had taken two safety precautions. First, defendant had laid mats in front of the doors to the pharmacy.[13] Second, defendant had placed a yellow warning sign on the floor in plain

---

[5] Doc. no. 5-1 (Plaintiff's Deposition), at 57-59.
[6] *Id.* at 59-60, 76.
[7] *Id.* at 59.
[8] *Id.* at 60-61, 65, 90-91, 95-96.
[9] Doc. no. 11 (Response to Motion for Summary Judgment), at 2.
[10] Doc. no. 5-1 (Plaintiff's Deposition), at 61.
[11] *Id.*
[12] *Id.* at 62.
[13] *See* doc. no. 5-3 (Photograph).

3

view several feet away from the doors.[14]  However, the yellow warning sign was located behind the wet areas of the floor.[15]  Further, defendant had not placed a warning sign on the exterior of the pharmacy, or the doors into the premises.[16]

Plaintiff had visited the pharmacy at issue on numerous previous occasions.[17] Upon entering the pharmacy, plaintiff alleges that she dried her feet on a mat in front of the door and immediately turned right in the direction of the detergent.[18]  She denies seeing the water on the floor, or the yellow warning sign several feet away from the doors.[19]  When plaintiff reached the area near the cash register, she slipped on the water and fell to the floor.[20]

The cashier on duty apologized for plaintiff's accident, and told her that "it was hard to run the cash register and keep the water [mopped] up as well."[21]  Plaintiff did not seek immediate medical attention for her injuries.[22]  She went to the emergency room at a hospital in Decatur at approximately 7:30 p.m.: *i.e.*, at least one hour after

---

[14] *See id.*

[15] *See id.*

[16] *See id.*

[17] Doc. no. 5-1 (Plaintiff's Deposition), at 58-59.

[18] *Id.* at 59-61, 69, 89; doc. no. 5-3 (Photograph).

[19] *Id.*

[20] Doc. no. 1-2 (Complaint) ¶ 2; doc. no. 5-1 (Plaintiff's Deposition), at 59.

[21] Doc. no. 5-1 (Plaintiff's Deposition), at 65; *see also id.* at 67, 76.

[22] *Id.* at 78.

the accident.[23]  Plaintiff was not taken to the hospital by ambulance.[24]  She was diagnosed with cervical strain and ligament strain to the right and left knees.[25]

In the wake of her accident, plaintiff has continued to shop at the pharmacy at issue.[26]  She is not aware of any other slip-and-fall accidents that have occurred at the pharmacy.[27]

### III.  DISCUSSION

**A.  Negligence**

"In order to prove negligence, a plaintiff must show that the defendant breached an existing duty, causing damage to the plaintiff." *Landreau v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 1318, 1321 (M.D. Ala. 1999).  In other words, a negligence claim under Alabama law has four elements: *i.e.*, duty, breach, causation, and damages. *Palmer v. Infosys Technologies Limited, Inc.*, 888 F. Supp. 2d 1248, 1255 (M.D. Ala. 2012) (citing *Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001)).  Where, as here, the plaintiff is a store customer and, thus, a business invitee, the defendant owes her a duty to exercise reasonable care in

---

[23] *Id.*

[24] *See* doc. no. 4 (Motion for Summary Judgment), at 3 (Defendant's Tenth Undisputed Fact); doc. no. 11 (Response to Motion for Summary Judgment), at 2 (stating that "Plaintiff admits paragraph 10").  Defendant cites to document number 5-5, a medical questionnaire from plaintiff's *follow-up* visit to her doctor, not from her *initial* visit to the emergency room.

[25] *See id.*  Defendant again cites to document number 5-5, a medical questionnaire from plaintiff's visit to her doctor.  Upon review, the questionnaire does not state her diagnosis.

[26] Doc. no. 5-1 (Plaintiff's Deposition), at 58.

[27] *Id.* at 58-59.

5

maintaining its premises

> ["]in a reasonably safe condition." *Bishop v. South*, 642 So. 2d 442, 445 (Ala. 1994). This duty requires [the defendant] to "warn of hidden defects and dangers that are known to it, but that are unknown or hidden to the invitee." *Raspilair v. Bruno's Food Stores, Inc.*, 514 So. 2d 1022, 1024 (Ala. 1987). Generally, though, this duty does not make the invitor liable "for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care." *Quillen v. Quillen*, 388 So. 2d 985, 989 (Ala. 1980).

*Landreau v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 1318, 1321-22 (M.D. Ala. 1999) (alterations supplied).

The Alabama Supreme Court has observed that a "fall caused by snow or rain is distinguishable from a fall resulting from some other object as is usual in a slip and fall case." *Gulas v. Ratliff*, 216 So. 2d 278, 281 (Ala. 1968). "It is not the duty of persons in control of [premises] to keep a force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several obvious reasons unnecessary to mention in detail." *Id.* at 281 (alteration supplied) (quoting *Cox v. Goldstein*, 53 So. 2d 354, 357 (Ala. 1951). "The shopkeeper is not required to stand constant vigil with a mop or towel on rainy days." *Boyd v. Wal-Mart Stores*, 710 So. 2d 1258, 1260 (Ala. Civ. App. 1997) (citing *Gulas*, 216 So. 2d at 281).

The plaintiff in *Cox* fell after taking a "few steps" past the entrance of a dress shop. 53 So. 2d at 357. The evidence showed that it had been raining for several

hours, and that when plaintiff stood up, she had muddy water on her skirt and hose. *Id.* The Alabama Supreme Court affirmed a verdict in favor of the dress shop, because the defendant had no duty "to keep a force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas," and because there was no evidence that it "did anything or omitted to do anything which storekeepers, of ordinary care and prudence, under similar circumstances do or omit to do for the protection of their patrons." *Id.*

Likewise, the plaintiff in *Gulas* fell after taking a "couple of steps" into a restaurant. 216 So. 2d at 278. It had been snowing and sleeting on the day of the accident, and there was melting snow and ice on the floor where the plaintiff fell. *Id.* at 279. Specifically,

> '[t]here were several spots of snow beside . . . [plaintiff] about as big as a silver dollar. These bits of snow were about ten to twelve in number. When she got up, there was some ice and dirty water on her coat that had the appearance of crushed ice. Her underclothing was damp where she had been sitting in ice. Her coat had some soil on it from dirty water and there was still some ice on her coat . . . . [T]here was no grease, oil, or other foreign substance, other than snow and water, on the restaurant floor."

*Id.* The Alabama Supreme Court affirmed a directed verdict in favor of the restaurant, because the defendant had no duty "to keep a force of moppers to clear the floor of snow brought in by incoming customers," and "did not breach any duty by failing to remove the snow." *Id.* at 281.

7

In *Terrell v. Warehouse Groceries*, 364 So. 2d 675 (Ala. 1978), the Alabama Supreme Court squarely affirmed the rule that owners of premises are not required to employ a "force of moppers" to reduce slippage on rainy days. The plaintiff in *Terrell* fell approximately 25 to 30 feet from the entrance of a grocery store. *Id.* at 675-76. The floor of the store was slippery due to the presence of clear rainwater that "appeared to be tracked in by customers." *Id.* at 677-78. The trial court directed a verdict in favor of the store, and the plaintiff appealed on the grounds that "to exempt storekeepers from a duty of reasonable care based upon a 'force of moppers' rationale is inequitable since there are viable alternative methods of making a floor safe." *Id.* at 676. The Alabama Supreme Court affirmed the verdict, and reasoned that:

> When it rains, surfaces naturally become more slippery than usual — a fact with which a customer is sufficiently familiar. To require a storekeeper to keep a floor completely dry during a rainstorm or to hold him responsible for every slick place due to tracked-in rain water would impose an unreasonable standard of care and would, in effect, make him an insurer of the customer's safety. Of course, each case must be examined in light of its particular circumstances, and where there are unusual accumulations of rain water or other circumstances, due care may require that the storekeeper take affirmative measures such as mopping, applying anti-slip compounds, or posting warnings.

*Id.* at 677.

Plaintiff's response to defendant's motion for summary judgment relies on *general* authority regarding negligence claims. She ignores the rule that a "fall caused by snow or rain is distinguishable from a fall resulting from some other object as is

usual in a slip and fall case," *Gulas*, 216 So. 2d at 281, and makes no attempt to distinguish the three *specific* cases cited by defendant: *i.e., Cox, Gulas,* and *Terrell*. Upon review, it is apparent that those cases are indistinguishable from the one at bar.

Like the plaintiff in *Terrell*, the plaintiff in this case slipped and fell on water that was tracked into the pharmacy by customers during a rainstorm.[28] Plaintiff "admits that the water was clear,"[29] that there were no puddles on the floor,[30] and that nothing was blocking her view of the floor.[31] Accordingly, defendant was not required to keep the floor "completely dry," and was not responsible for "every slick place due to tracked-in rain water." *See Terrell*, 364 So. 2d at 677.

Plaintiff also acknowledges that there were no problems with the lighting in the pharmacy, no defects in the construction of the floor, and no substances besides water on the floor.[32] Accordingly, she has not shown the existence of "unusual accumulations of rain water or other circumstances" requiring defendant to "take affirmative measures such as mopping, applying anti-slip compounds, or posting warnings." *Id.* at 677.

Even so, it is undisputed that defendant placed mats in front of the doors, and

---

[28] Doc. no. 5-1 (Plaintiff's Deposition), at 60-61, 65, 90-91, 95-96.

[29] Doc. no. 11 (Response to Motion for Summary Judgment), at 2.

[30] Doc. no. 5-1 (Plaintiff's Deposition), at 61.

[31] *Id.*

[32] *Id.* at 62.

a yellow warning sign on the floor several feet away from the doors.[33]  It is also undisputed that plaintiff *dried her feet on a mat*,[34] which indicates an awareness of the fact that her feet needed drying:  *i.e.*, that they were wet.

For all of those reasons, defendant did not owe plaintiff a duty to keep the floor "completely dry," or "take affirmative measures such as mopping, applying anti-slip compounds, or posting warnings."  *Id.* at 677.  Accordingly, this court will grant defendant's motion for summary judgment on plaintiff's negligence claim.

**B.  Wantonness**

"To be guilty of wanton conduct, one must, with reckless indifference to the consequences, consciously and intentionally do some wrongful act or omit some known duty, and to be actionable, that act or omission must produce the plaintiff's injury."  *Carter v. Treadway Trucking, Inc.*, 611 So. 2d 1034, 1035 (Ala. 1992).  The Alabama Supreme Court has emphasized that "wantonness, which requires some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission, is not to be confused with negligence (*i.e.*, mere inadvertence)."  *Ex parte Anderson*, 682 So. 2d 467, 470 (Ala. 1996).

> Wantonness is not merely a higher degree of culpability than negligence.  Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability.  Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of

---

[33] *See* doc. no. 5-3 (Photograph).

[34] *Id.* at 59-61, 69, 89; doc. no. 5-3 (Photograph).

> danger, or with consciousness, that the doing or not doing of some act will likely result in injury.

*Lynn Strickland Sales & Service, Inc. v. Areo-Lane Fabricators, Inc.*, 510 So. 2d 142, 145-46 (Ala. 1987).

Plaintiff's response to defendant's motion for summary judgment does not address the challenge to her claim of wantonness. She has also produced no evidence to show that defendant, or any of its employees, "acted with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury." *See id.* Accordingly, this court will grant summary judgment on plaintiff's wantonness claim.

## IV.  CONCLUSION

For the reasons explained above, defendant's motion for summary judgment is GRANTED, and all of plaintiff's claims are DISMISSED with prejudice. Costs are taxed to plaintiff. The Clerk is directed to close this file.

DONE and ORDERED this 9th day of July, 2013.

_____
United States District Judge